FILED
United States Court of Appeals
Tenth Circuit

April 15, 2021

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

MANUEL SUSANO-BONILLA,
a/k/a Manuel S. Bonilla,

     Petitioner,

v.

MERRICK B. GARLAND,
United States Attorney General,[*]

    Respondent.

No. 20-9557
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Manuel Susano-Bonilla ("Petitioner"), a native and citizen of Mexico,

petitions for review of the Board of Immigration Appeals' ("BIA") decision denying

his motion to reopen his proceedings to seek cancellation of removal under 8 U.S.C.

_____

[*] On March 11, 2021, Merrick B. Garland became Attorney General of the United States. Consequently, his name has been substituted for William P. Barr as Respondent, per Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 1229b(b)(1). Some of Petitioner's arguments challenge the BIA's discretionary hardship determination under § 1229b(b)(1)(D), and we lack jurisdiction to consider those arguments. His remaining arguments lack merit. We therefore dismiss his petition in part and deny it in part.

## BACKGROUND

In 1999, Petitioner entered the United States at eighteen years old. In 2012, the Department of Homeland Security commenced removal proceedings against him. Petitioner conceded the removal charge and applied for cancellation of removal under § 1229b(b)(1). For such relief, Petitioner needed to show: (1) ten years of continuous physical presence in the United States immediately prior to the application; (2) "good moral character during such period"; (3) the lack of any disqualifying convictions; and (4) that his "removal would result in exceptional and extremely unusual hardship to" a qualifying relative who is a United States citizen or lawful permanent resident. § 1229b(b)(1). For the hardship requirement, Petitioner alleged that his three children, who are United States citizens, would suffer exceptional and extremely unusual hardship if he were removed to Mexico.

At the hearing before an immigration judge ("IJ") in 2017, Petitioner testified that if he were removed, his children would remain in the United States with their respective mothers—M.G.S. and A.A.S. would remain with Petitioner's ex-wife, Joanna Herrera ("Ms. Herrera"), while U.E.S. would remain with Petitioner's long-time partner, Rocelyn Salgado-Escobedo ("Ms. Salgado"). Petitioner testified that his children do not have health concerns or special educational needs but that his

2

removal would cause them emotional and economic hardship. He testified that he sees M.G.S. and A.A.S. multiple times per week through a custody arrangement with Ms. Herrera. And he explained that he lives with U.E.S. along with Ms. Salgado and her three older children, all United States citizens—J.I.A.S., K.E.A.S., and J.A.A.S. Ms. Salgado testified that Petitioner has been the sole father figure in her older children's lives and that their biological father does not provide any financial support. Petitioner testified that he did not believe he would be able to provide the same level of financial support to his children as well as to Ms. Salgado and her older children if he were removed to Mexico. The evidence also indicated that Ms. Herrera, Ms. Salgado, and Petitioner all had family members who lived nearby and could provide temporary assistance if Petitioner were removed.

In January 2018, the IJ denied Petitioner's application. The IJ found that Petitioner was credible and that he satisfied several requirements for cancellation of removal. But the IJ concluded that Petitioner had not shown the potential hardship to his children rose to the level required under § 1229b(b)(1)(D). The BIA dismissed Petitioner's appeal in June 2019, and he did not petition this court for review.

In July 2019, Petitioner married Ms. Salgado. A month later, he filed a motion to reopen in the BIA along with an updated cancellation application, claiming his stepchildren—J.I.A.S., K.E.A.S., and J.A.A.S.—as additional qualifying relatives. Petitioner also submitted evidence that three of the six children have medical and special educational needs requiring his emotional and financial support, including that: (1) U.E.S. was recently diagnosed with mixed expressive-receptive language

3

disorder; (2) Petitioner recently discovered that A.A.S. has learning disabilities; and (3) J.A.A.S. suffers from attention deficit hyperactivity disorder and underwent an adenoidectomy in 2015 and an appendectomy in 2018. He also alleged the other children would be emotionally harmed by his removal. In May 2020, the BIA denied Petitioner's motion to reopen. The BIA recognized the potential hardship to Petitioner's children but concluded that the hardship still did not rise to the level required under § 1229b(b)(1)(D) and that the new evidence would not alter the outcome on his cancellation claim. Petitioner timely petitioned for review.

## DISCUSSION

Under § 1252(a)(2)(B)(i), we lack jurisdiction to review "the discretionary aspects of a decision concerning cancellation of removal," including "the determination of whether the petitioner's removal . . . would result in exceptional and extremely unusual hardship to a qualifying relative under . . . § 1229b(b)(1)(D)." *Galeano-Romero v. Barr*, 968 F.3d 1176, 1181 (10th Cir. 2020) (internal quotation marks omitted). This jurisdictional bar extends to "the BIA's denial of a motion to reopen because the [noncitizen] still has failed to show the requisite hardship." *Alzainati v. Holder*, 568 F.3d 844, 849 (10th Cir. 2009). Nevertheless, under § 1252(a)(2)(D), we retain "jurisdiction to review constitutional claims and questions of law, including those that arise in the circumstances specified at § 1229b(b)(1)." *Galeano-Romero*, 968 F.3d at 1182 (internal quotation marks omitted). We review such contentions de novo. *See Mena-Flores v. Holder*, 776 F.3d 1152, 1162 (10th Cir. 2015).

4

Petitioner attempts to evade the jurisdictional bar under § 1252(a)(2)(B)(i) by purporting to raise two constitutional claims and three questions of law. Some of his arguments are barred by § 1252(a)(2)(B)(i); the others lack merit.

**A. Constitutional Claims**

To be reviewable under § 1252(a)(2)(D), a constitutional claim must be "colorable," *Galeano-Romero*, 968 F.3d at 1184 (internal quotation marks omitted), which we have defined, "generously," as neither "immaterial and made solely for the purpose of obtaining jurisdiction" nor "wholly insubstantial or frivolous," *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1240 (10th Cir. 2001) (internal quotation marks omitted). A petitioner "does not present a colorable constitutional claim . . . by arguing that the evidence was incorrectly weighed, insufficiently considered, or supports a different outcome." *Galeano-Romero*, 968 F.3d at 1184-85 (internal quotation marks omitted). An argument that the "BIA failed to apply . . . controlling BIA precedent and regulations" also does not constitute a colorable constitutional claim. *Arambula-Medina v. Holder*, 572 F.3d 824, 829 (10th Cir. 2009).

Petitioner claims the BIA violated his due process rights by failing to (1) consider his new and old evidence cumulatively, and (2) consider and credit his new evidence of hardship. Neither claim presents a colorable constitutional claim.

We recently held that similar claims—that the BIA "failed to consider all the relevant factors . . . in the aggregate" and either "overvalued" or "undervalued" certain evidence—were not colorable constitutional claims. *Galeano-Romero*,

5

968 F.3d at 1185 (internal quotation marks omitted) (describing the claims as "merely contend[ing] that the [BIA] reached the wrong conclusion"). And although Petitioner contends the BIA's refusal "'to consider new and pertinent evidence'" in deciding a motion to reopen implicates due process, Pet'r's Opening Br. at 30 (quoting *Alzainati*, 568 F.3d at 850), he does not allege a "wholesale failure" to consider his new evidence, *Alzainati*, 568 F.3d at 851 (internal quotation marks omitted). Instead, he contends the BIA did not address "the full extent of [his children's] medical and educational hardships," noting that (1) U.E.S. needs "twice-weekly therapy"; (2) J.A.A.S. has undergone an adenoidectomy, not just an appendectomy, and needs "substantial emotional support," not just medication; and (3) A.A.S. was diagnosed with a language disability and receives therapy, not just "special education courses." Pet'r's Opening Br. at 33-34 (internal quotation marks omitted). At bottom, such an argument is "a quarrel about the level of detail required in the BIA's analysis, not a colorable due process claim." *Alzainati*, 568 F.3d at 851.[1]

Petitioner's arguments that the BIA failed to assess his evidence cumulatively and failed to credit his new evidence amount to a dispute with the hardship decision, albeit "cloaked in constitutional garb," *Kechkar v. Gonzales*, 500 F.3d 1080, 1084 (10th Cir. 2007). We thus dismiss his alleged constitutional claims for lack of jurisdiction.

---

[1] In any event, "the BIA is not required to discuss every piece of evidence" in a written decision. *Hadjimehdigholi v. INS*, 49 F.3d 642, 648 n.2 (10th Cir. 1995).

**B. Questions of Law**

Next, to present a question of law under § 1252(a)(2)(D), it must either advance "a statutory-construction argument" or contest "the application of a legal standard to undisputed or established facts." *Galeano-Romero*, 968 F.3d at 1182 (internal quotation marks omitted). We have recognized several reviewable questions of law arising from hardship determinations, including: (1) whether the BIA improperly "*required*" specific evidence to establish hardship; (2) whether the hardship standard adopted by the BIA "rests on an unreasonable interpretation of § 1229b(b)(1)(D)'s 'exceptional and extremely unusual hardship' condition"; (3) whether the BIA "departed from its own adopted hardship standard, by ignoring it or favoring some other inapplicable standard"; and (4) whether the BIA "applied the incorrect standard of review to an IJ's factual determinations." *Id.* at 1184 (internal quotation marks omitted). A petitioner, however, does not present a reviewable "question of law by disputing the [BIA]'s appraisal of the degree of hardship," *id.* at 1182, or criticizing "how the [BIA] exercise[d] its discretion," even if the criticism is "framed as a challenge to the application of a legal standard to established facts," *id.* at 1184.

In his first argument purporting to raise a question of law, Petitioner argues the BIA erred by not reciting its standard for assessing hardship under § 1229b(b)(1)(D) and by failing to properly apply the standard by considering his evidence in the aggregate. He relies on our observation in *Galeano-Romero* that the fact "[t]hat the [BIA] has announced a standard to aid its hardship determination does not create

7

jurisdiction for us to review the [BIA]'s *application* of that standard, provided that the [BIA] acknowledges its standard and exercises its discretion within the bounds of its precedents' cabining of such discretion." *Id.* at 1183.

We do not read that statement in *Galeano-Romero* as requiring the BIA explicitly to announce its hardship standard in cancellation cases, at least not to the level of detail that Petitioner suggests.[2] Instead, we have insisted only that the BIA "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Maatougui v. Holder*, 738 F.3d 1230, 1242-43 (10th Cir. 2013) (internal quotation marks omitted). Regardless, whether the BIA erred by not explicitly announcing a legal standard does not qualify as a reviewable question of law because it is neither "a statutory-construction argument" nor a challenge to "the application of a legal standard to undisputed or established facts." *Galeano-Romero*, 968 F.3d at 1182 (internal quotation marks omitted). We therefore hold that this portion of Petitioner's argument does not present a reviewable question of law and that we lack jurisdiction to consider it.

---

[2] Petitioner admits the BIA cited its seminal hardship cases, which require a noncitizen to show hardship "'substantially different from, or beyond, that which would normally be expected from the deportation of a[] [noncitizen] with close family members here.'" *In re Andazola-Rivas*, 23 I. & N. Dec. 319, 321 (B.I.A. 2002) (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (B.I.A. 2001)). But he asserts the BIA cited the cases only to show the standard is difficult to meet. And he insists the BIA erred by not also specifying "the factors [it] considered, how [it] weighed the evidence considering these factors, or whether [it] considered the factors and evidence in the aggregate." Pet'r's Opening Br. at 19. Petitioner cites no case imposing such a requirement on the BIA. *See United States v. Banks*, 451 F.3d 721, 728 (10th Cir. 2006) (declining to address an argument unsupported by authority).

As for whether the BIA failed to properly apply its standard by considering his evidence in the aggregate, we held above that Petitioner's constitutional claim raising this same issue was not colorable. Nevertheless, Petitioner insists this argument presents a reviewable question of law because it contends the BIA departed from its own precedent and "failed to exercise its discretion within the applicable legal standard." Pet'r's Opening Br. at 19.

Petitioner has not shown that the BIA failed to aggregate his evidence. The BIA plainly addressed his "newly submitted evidence" and "the addition of three qualifying relatives." Admin. R. at 4 & n.4. The BIA also addressed the evidence presented to the IJ, although Petitioner, without citing supporting authority, faults the BIA for relegating this discussion to a footnote. The BIA then concluded that, "even considered *cumulatively*, the documents submitted do not warrant reopening of these proceedings." *Id.* at 4 (emphasis added). The BIA did not fail to aggregate Petitioner's evidence, and his argument fails on the merits.

In his second argument purporting to raise a question of law, Petitioner asserts that the BIA improperly placed a "heavy burden" on him to establish prima facie eligibility for cancellation. Pet'r's Opening Br. at 22 (internal quotation marks omitted). We have jurisdiction to the extent he contends the BIA failed to apply the correct legal standard in deciding a motion to reopen. *See Galeano-Romero*, 968 F.3d at 1184.

Petitioner's argument is unsupported by the record. The BIA did not place a "heavy burden" on him to demonstrate prima facie eligibility for relief. Pet'r's

9

Opening Br. at 22 (internal quotation marks omitted). Although the BIA found his new evidence did "not demonstrate prima facie eligibility for cancellation," Admin. R. at 4, that was not the "sole basis for denying" his motion, Pet'r's Opening Br. at 23. Rather, the BIA denied the motion because it concluded the new evidence, even considered cumulatively with the evidence submitted to the IJ, would not change the outcome on the cancellation claim. *See* Admin. R. at 4 n.4 (noting the additional qualifying relatives "would not change the [IJ]'s hardship analysis"); *id.* at 5 (noting "the new evidence would [not] alter the outcome"). And *that* is the context in which the BIA referenced—correctly—the "heavy burden." *See id.* at 3 (noting a noncitizen "must satisfy the 'heavy burden' of establishing that if the proceedings were reopened, . . . the new evidence would likely change the result in the case" (quoting *In re Coelho*, 20 I. & N. Dec. 464, 472-73 (B.I.A. 1992))); *id.* at 5 (concluding Petitioner had "not met the high burden of establishing that the new evidence would alter the outcome of reopened proceedings involving [his] cancellation of removal claim" and citing *Coelho* for the "heavy burden" principle as well as *INS v. Doherty*, 502 U.S. 314, 323 (1992), for the proposition that reopening is "disfavored"). Accordingly, Petitioner's argument lacks merit.

In his final argument purporting to raise a question of law, Petitioner contends that the BIA misapplied the standard for medical hardship by requiring him to establish his qualifying relatives had multiple serious or compelling medical or special educational needs. We have jurisdiction to the extent Petitioner contends the

10

BIA improperly required specific evidence or departed from its own hardship standard. *See Galeano-Romero*, 968 F.3d at 1184.

Petitioner's argument hinges on the BIA's statement that "[w]hile the evidence submitted shows that [Petitioner's] removal would result in hardship to additional family members, it does not show serious or compelling medical or special educational needs, such that the hardship to his children upon his removal would likely reach the level of 'exceptional and extremely unusual hardship.'" Admin. R. at 4. Petitioner contends "[t]he BIA's use of the plural form of the word 'needs' indicates that the BIA required [him] to prove more than one serious medical condition to establish unusual hardship." Pet'r's Opening Br. at 28. Petitioner's reading is far too strained. In any event, the phrasing at issue echoes language in the BIA's seminal hardship case. *See Monreal-Aguinaga*, 23 I. & N. Dec. at 63 (stating a "strong applicant [for relief] might have a qualifying child with very serious health *issues*, or compelling special *needs* in school" (emphasis added)). Accordingly, this argument lacks merit.

## CONCLUSION

The petition for review is dismissed in part and denied in part.

Entered for the Court

Nancy L. Moritz
Circuit Judge

11